IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERRY RUTTER AND MARY JANE URBANEC, EXECUTOR AND EXECUTRIX OF THE ESTATE OF MAURICE HEH, DECEASED;<br><br>    Plaintiff,<br><br>    vs.<br><br>NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No. 20-1581 |

**MEMORANDUM OPINION**

Presently before the Court are two summary judgment motions: (1) Motion for Summary Judgment filed by Defendant Nationwide Mutual Fire Insurance Company ("Nationwide") (Docket No. 23); and (2) Motion for Partial Summary Judgment filed by Plaintiff Maurice Heh, substituted by Perry Rutter and Mary Jane Urbanec, Executor and Executrix of Heh's Estate (hereinafter collectively referred to as "Heh") (Docket No. 25). The Court has considered the motions, supporting memoranda, the parties' respective responses in opposition to the motions (Docket Nos. 32, 33), briefs in reply (Docket Nos. 34, 35), statements of material fact, and the evidence of record. For the reasons set forth herein, Nationwide's motion is granted, and Heh's motion is denied.

I. **Background**

Because the parties are well-acquainted with the factual background of this case, the Court herein presents an abbreviated version of the facts relevant to the pending motions. Heh owned a

home at 206 Parklane Drive in Braddock, Pennsylvania (hereinafter the "Property").  (Docket No. 22, ¶ 1).  At all times relevant to this case, Nationwide insured the Property.  (*Id.* ¶ 12).

*Nationwide Insurance Policy*

Heh's Nationwide Homeowner Policy (Policy Number 54 37 HO 436949, hereinafter the "Policy") names Heh as the insured and lists the Property on its Declarations under "Residence Premises Information."  (Docket No. 22-4, pg. 2).  Section I of the Declarations lists the Policy's coverages as follows:

1. Coverage A – Dwelling; Liability Limit of $172,400
2. Coverage B – Other Structures; Liability Limit of $17,240
3. Coverage C – Personal Property; Liability Limit of $120,680
4. Coverage D – Loss of Use; Liability Limit of $172,400

(*Id.*).  This case concerns only Coverage A (Dwelling) and Coverage C (Personal Property).

At Page A1 of the Policy, under "Insuring agreement," Nationwide indicates that coverage is contingent on "compliance with all the policy provisions." (*Id.* at pg. 8).  Coverage A (Dwelling) is described as coverage of "[t]he dwelling on the **residence premises** used mainly as **your** private residence, including attached structures and attached wall-to-wall carpeting."  (*Id.* at pg. 10).  Coverage C (Personal Property) is described as the coverage of "personal property owned or used by an **insured** at the **residence premises**."  (*Id.*).[1]

Some of the words and phrases that repeatedly appear in the Policy are defined in the Policy's "Definitions" section.  (*Id.* at pg. 8).  Therein, the Policy defines "WE" as the issuing company on the Declarations, *i.e.*, Nationwide.  (*Id.*).  The Policy defines "'YOU' and 'YOUR'

---

[1]  The coverage provision for Coverage C goes on to say that "[a]t **your** request, [**Nationwide**] will cover personal property owned by others" and that "[i]t must be on the part of the **residence premises** occupied by an **insured**."  (*Id.*). The Policy carves out property "of roomers, boarders, and other tenants" which is not covered except that "[p]ersonal property, at the **residence premises**, belonging to roomers and boarders related to an **insured** is covered."  (*Id.* at pg. 11).

2

… [as] the named **insured** shown in this policy who resides at the **residence premises**." (*Id.*).[2] The Policy indicates that "'INSURED' means **you** and the following if residents of **your** household at the **residence premises**: a) **your** relatives.  b) any other person under age 21 and in the care of **you** or **your** relatives." (*Id.*).  And the term "**residence premises**" is defined as the "one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated." (*Id.*).

*The Property*

Heh purchased the Property in 1990 and resided there with his wife until her passing. (Docket No. 22, ¶¶ 3-4).  On January 1, 2019, Heh agreed to rent the Property and he and tenants entered a leasing agreement, though a copy of the agreement was never found.  (Docket No. 33-1, ¶ 4; Docket No. 22, Ex. A (Heh Deposition), pgs. 15, 21, 23).  There are indicia in the record that the agreement between Heh and his tenants provided for the possibility that the tenants would rent to own.  (Docket No. 22, Ex. A (Heh Deposition), pgs. 17, 20; *id.* Ex. E (Giovanni Martello Deposition), pgs. 11-12.  *But see id.* Ex. F (Georgina Humphries Deposition), pg. 17 (reflecting one of the tenant's understandings that rent-to-own was part of negotiations but not ultimately agreed upon)).  There are also indicia in the record that Heh included his furniture—either for the tenants' use during their occupancy or for the tenants to own—in the agreement.  (*Id.* Ex. A (Heh Deposition), pg. 29 (Question: "And did you take furniture from [the Property], in Braddock, to [your next residence]?" Answer: "I took a bed, a dresser, a curio cabinet, and a chair, a La-Z-Boy. That's all I took." Question: "Did you make any arrangement or deal with [the tenants] that they could purchase the furniture that was in the house?" Answer: I sold it as a packet…. If they wanted to buy the house, fine, then they could have everything that was in there."); *id.* Ex. F

---

[2]   You/your are further defined to include a spouse who also "resides at the same **residence premises**." (*Id.*).

3

(Georgina Humphries Deposition), pg. 19 ("We could have – whatever was in the house was ours. [Heh] didn't care about it."); *id.* Ex. E (Giovanni Martello Deposition), pg. 36 (Question: "Was it your understanding that, at the end of the lease, Mr. Heh's furniture would remain in the property?" Answer: "Yes.")).

After Heh leased the Property, the evidence of record indicates that he moved to Point Pleasant Retirement Community ("Point Pleasant"). (*Id.* Ex. A (Heh Deposition), pgs. 6, 23, 27). Once he moved into Point Pleasant, it is undisputed that Heh did not at any point move back to the Property (*id.* Ex. A. (Heh Deposition), pg. 28); however, in January 2020, Heh asked his tenants to vacate the Property. (Docket No. 22, Ex. A. (Heh Deposition), pg. 43; *id.* Ex. E (Giovanni Martello Deposition), pgs. 24-26). Heh gave the tenants up to a month to move out and described this dissolution of the landlord-tenant relationship as "congenial." (*Id.* Ex. A. (Heh Deposition), pg. 43).

*Fire at the Property*

On February 3, 2020, before the tenants had fully moved out of the Property, there was a fire that resulted in significant physical damage to Heh's home and the personal property inside of it. (Docket No. 22, ¶ 13). At the time of the fire, one of the tenants was at the Property to collect some of her belongings due to the termination of the rental agreement. (*Id.* Ex. G (Mary Jane Humphries Deposition), pgs. 9-10 ("And then, whenever I went downstairs, there was a whole bunch of clothes in the laundry room downstairs, and then, there was like … a whole bunch of boxes and stuff. Whenever I had went down the steps, all these boxes were on fire.").[3]

---

[3] This tenant indicated that she lost a significant amount of personal property in the fire, *e.g.*, clothes, her son's clothes, a dresser, her shoes, a cat. (*Id.* pg. 12). Other tenants represented the same. (*Id.* Ex. F (Georgina Humphries Deposition), pg. 13 (Question: "So you lost a lot of things in the fire?" Answer: "Yes."); *id.* Ex. E (Giovanni Martello Deposition), pgs. 30-31 (Question: "Can you tell me what kind of things you had there [at the time of the fire]?" Answer: "Everything. Clothes, memorabilia, sports memorabilia, electronics, like my Xbox, DVDs.")).

After the fire Nationwide investigated the cause of the loss but denied coverage "based upon the policy provision related to the occupancy of the dwelling." (*Id.* Exs. N, Q). In its investigation, Nationwide determined that Heh "had not resided in the residence premises for an extended period and had not notified Nationwide that the property was rented to tenants." (*Id.*). The notice of denial referred Heh to various sections of the Policy in support of the denial. (*Id.*). Heh does not dispute the factual matter of whether he resided at the residence premises prior to or at the time of the fire.

After Heh was denied coverage, he filed a Complaint in the Court of Common Pleas of Allegheny County for one count for breach of contract, and he alleged therein that he gave Nationwide prompt notice of a covered loss under his Policy and was in compliance with the Policy at all relevant times. (Docket No. 1-1, ¶ 5). He further alleged that an adjuster had determined that the loss caused by the fire resulted in damages over the Policy limit of $172,400.00. (*Id.* ¶ 13). Heh demanded judgment against Nationwide of $35,000.00 with interest, court costs, and damages for delay. (*Id.* ¶ 15). Nationwide removed the case to this Court based on the parties' diversity and an indication in Heh's Complaint that he would seek damages at the Policy limit of $172,400.00. (Docket No. 1, ¶ 4). Accordingly, Nationwide sought the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (*Id.* ¶¶ 9-10). Nationwide and Heh have since filed their respective motions for summary judgment and partial summary judgment. (Docket Nos. 23, 25). The motions are ready for disposition.

II.     **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a*); see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those "that might affect the

outcome of the suit under the governing law." *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 247–48). A dispute pertaining to such a fact is "'genuine' if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue." *Id.* (quoting *Anderson*, 477 U.S. at 247–48). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material* fact." *Anderson*, 477 U.S. at 247–48.

When ruling on a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *Boyle*, 139 F.3d at 393. The same standard applies when courts review cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). "[C]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

### III.  Discussion

In their motions for summary judgment, the parties ask the Court to decide whether Nationwide's denial of Heh's claim for Coverage A (Dwelling) and Coverage C (Personal Property) was appropriate. Nationwide, in its summary judgment motion, argues the Policy predicates coverage under both coverage provisions on the insured residing at the Property. Nationwide argues that, because there is no factual debate about whether Heh was living at the Property, it is entitled to judgment as a matter of law. Heh opposes Nationwide's motion and

argues that the Policy is ambiguous with respect to there being a residency condition for Coverage A (Dwelling), and he further argues that the cases relied on by Nationwide are distinguishable. Regarding Nationwide's motion with respect to Coverage C (Personal Property), Heh argues in opposition and in his motion for partial summary judgment on the same issue, that his losses of personal property at the Property is covered regardless of where he was residing. For support of his argument, he cites deposition testimony of Nationwide property claims manager Michael Zerby who appeared to interpret the Policy as *not* conditioning Coverage C (Personal Property) on residency.

Pennsylvania law[4] dictates that the Court determines the "existence or non-existence of coverage" under an insurance contract. *Gerow v. State Auto Prop. & Cas. Co.*, 346 F. Supp. 3d 769, 778 (W.D. Pa. 2018) (citing *Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)). The "primary goal in interpreting a policy … is to ascertain the parties' intentions as manifested by the policy's terms." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). For language that is "clear and unambiguous," that means the Court merely "give[s] effect to that language." *Id.* (quoting *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)); *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163 (3d Cir. 2011) ("A policy must be read as a whole and its meaning construed according to its plain language."). "[A]mbiguity exists when the questionable term or language, viewed in the context of the entire policy, is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004) (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)). A contract

---

[4] "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). The parties do not dispute the application of Pennsylvania law in this case.

7

is not "ambiguous merely because the parties disagree about its construction." *Meyer*, 648 F.3d at 164.  Employing these principles, the Court herein assesses the parties' arguments first with respect to Coverage A (Dwelling), and then with respect to Coverage C (Personal Property).

*Coverage A (Dwelling)*

Nationwide argues that Heh's failure to reside at the Property was an appropriate basis for denial of Coverage A (Dwelling).  For support of its position, Nationwide points to the following provisions of the Policy:

- The Coverage A (Dwelling) provision, which states that Nationwide covers "The dwelling on the **residence premises** used mainly as **your** private residence" (Docket No. 22-4, pg. 10);

- The residence-premises definition, wherein "residence premises" is defined as "the one, two, three or four-family dwelling … located at the mailing address shown on the Declarations unless otherwise indicated" (*id.* at pg. 8), and;

- Definitions of "you," "your," and "insured," which—for you and your—are "the named **insured** shown in this policy who resides at the **residence premises**," and—for insured—is "**you** and [certain others] if residents of **your** household at the **residence premises**."  (*id.*).

Nationwide interprets these provisions as limiting coverage based on whether the insured resides at the covered property.  And while Nationwide's Policy is less explicit in its conditioning its coverage on residency than the policies in cases on which Nationwide seeks to rely,[5] the Court ultimately agrees.

---

[5]    For instance, Nationwide cites *Campbell v. State Farm Fire & Cas. Co.*, wherein the Court dismissed a breach-of-contract claim for an insurance policy that defined "dwelling" as a place "used principally as a private residence on the **residence premises** shown in the Declarations" and then defined "Residence Premises" as "where the insured resides and which is shown in the Declaration."  No. 2:18-CV-00292, 2018 WL 3468214, at *1 (W.D. Pa. July 18, 2018).  Based on that language, the court determined that the policy was unambiguous and that "for the [p]laintiff to have coverage for the physical structure in question, the [p]laintiff must 'reside' at the covered property for the policy to provide coverage for the loss." *Id.*  As Nationwide acknowledges, the residence-premises definition in its Policy, unlike the policy at issue in *Campbell*, does not specify that the residence premises is "where the insured resides"; rather, the Policy in this case defines residence premises as the dwelling structure at the mailing address shown on the Declarations.  Thus, Nationwide is forced to rely on the less explicit dwelling coverage provision that indicates dwelling coverage is only available for the "dwelling on the **residence premises** used mainly as **your** private residence."  (Docket No. 22-4, pg. 10).  The same distinguishability is present in the other cases on which Nationwide

8

Because there is no dispute Heh did not reside at the Property at the time of the fire or for a significant amount of time prior thereto, Coverage A (Dwelling) is unambiguously unavailable to him. Such coverage is available for the dwelling on the residence premises, *i.e.*, "the one, two, three or four-family dwelling … located at the mailing address shown on the Declarations," that is used "***mainly***" as the named insured's private residence. (Docket No. 22-4, pgs. 8, 10 (emphasis added)). The Merriam-Webster Unabridged Dictionary defines "mainly" as "in the principal respect" or "for the most part." "Mainly," *Merriam-Webster's Unabridged Dictionary*, https://unabridged.merriam-webster.com/unabridged/mainly (accessed 20 Dec. 2023). The Oxford Dictionaries define "mainly" as "more than anything else." "Mainly," *Oxford Dictionaries*, https://premium.oxforddictionaries.com/us/definition/american_english/mainly (accessed 20 Dec. 2023). Accordingly, the terms of Coverage A (Dwelling) are not reasonably susceptible to an interpretation that would entitle Heh to coverage where the Property was not being used "in the principal respect" or "more than anything else" as his private residence. *See Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 560 (3d Cir. 2008) (explaining that under Pennsylvania law, "when a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence" (citing *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 545 A.2d 343, 346 (Pa. Super. Ct. 1988)). For these reasons, the Court will grant Nationwide's motion with respect to Heh's allegation of breach of contract for failure to provide coverage under Coverage A (Dwelling).

---

relies, for instance in *Mu'Min v. Allstate Prop. & Cas. Ins. Co.*, the court examined an insurance contract for coverage of a dwelling wherein the contract defined "dwelling" as "the single family building structure identified as the insured property on the Policy Declarations, ***where you reside*** and which is principally used as a private residence." No. CIV.A. 10-7006, 2011 WL 3664301, at *9 (E.D. Pa. Aug. 17, 2011) (emphasis added). In *Gerow v. State Auto Prop. & Cas. Co.*, the court examined an insurance contract's residency condition that defined "'residence premises' … as the 'one family dwelling where you reside ... and which is shown as the "residence premises" in the Declarations.'" 346 F. Supp. 3d 769, 778 (W.D. Pa. 2018).

*Coverage C (Personal Property)*

Nationwide also seeks summary judgment with respect to Coverage C (Personal Property) insofar as Heh sought coverage for the personal effects he left at the Property when he moved to Point Pleasant. Heh opposes the motion and moves for partial summary judgment on the same issue. Heh argues that Coverage C (Personal Property) lacks a residency requirement, that Nationwide is responsible for not more clearly articulating a residency requirement as the drafter of the Policy, and that any question concerning who owned the Personal Property at the time of the fire—Heh or his tenants—is a question of fact not resolvable at this stage of litigation. Nationwide argues that not only Coverage A (Dwelling), but also Coverage C (Personal Property), is subject to a residency requirement because the Definitions section of the Policy applies equally to all coverages found therein.[6]

As the Court has explained, terms of an insurance contract are ambiguous if "reasonably susceptible of different constructions and capable of being understood in more than one sense." *USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d 593, 609 (W.D. Pa. 2000), *aff'd*, 345 F.3d 190 (3d Cir. 2003). If language in an insurance contract is ambiguous, then "the clause giving rise to the ambiguity must be construed in favor of the insured." *Id.* However, courts must not strain to find ambiguity. *Meyer*, 648 F.3d at 164. And terms of an insurance contract are not ambiguous merely because "the parties proffer different interpretations" forcing the Court to make "difficult" determinations of "which interpretation is persuasive." *In re Am. Home Mortg. Holdings, Inc.*, 637 F.3d 246, 256 (3d Cir. 2011). Upon close examination in this case, Heh's proffered interpretation of Coverage C (Personal Property) is not persuasive.

---

[6] Nationwide additionally argues that even if this Court agrees with Heh as to Coverage C (Personal Property), damages have not been proven and would require a trial. The Court does not need to reach this question to resolve the motions before it.

For Coverage C (Personal Property), the relevant policy language is: "**We** cover personal property owned or used by an **insured** at the **residence premises**." (Docket No. 22-4, pg. 10). Read in isolation, Coverage C (Personal Property) does not contain an explicit residence condition. However, Nationwide argues that the reference therein to the "insured" combined with the definition of "you"/"your" supplies a residence requirement. (Docket No. 32, pg. 7). As noted *supra*, the definitions of "you" and "your" reference residency: "'YOU' and 'YOUR' refer to the named **insured** shown in this policy who resides at the **residence premises**." (Docket No. 22-4, pg. 8). And the definition of insured likewise incorporates "you" and "your": "'INSURED' means **you**" along with certain other relatives (and young people in the insured or relatives' care) who reside at the insured's household at the residence premises. (*Id.*). Reading the policy language in Coverage C (Personal Property) with the nested definitions of "insured," "you," and "your," the terms of coverage read:

> We cover personal property owned or used by [the named insured shown in this policy *who resides at the* residence premises] at the residence premises.

Thus, when the Policy is "read as a whole and its meaning construed according to its plain language," *Meyer*, 648 F.3d at 163, Coverage C (Personal Property) is conditioned upon the named insured's residence at the residence premises. Therefore, Nationwide is entitled to summary judgment with respect to Heh's breach-of-contract allegation for Coverage C (Personal Property).

Because the Court interprets the terms of the Policy, Heh's insistence that Nationwide's representative, Michael Zerby, appeared to agree with Heh's position regarding a residency requirement for Coverage C (Personal Property) (*see* Docket No. 22, Ex. R (Michael Zerby Deposition), pgs. 29-30), is unpersuasive. And the Court is likewise unpersuaded by Heh's argument that the Court should rely on *Hill v. Nationwide Mut. Fire Ins. Co.*, 448 S.E.2d 747 (Ga.

Ct. App. 1994), wherein the court determined that "a reasonable person in the position of the insured" would read the insurance contract at issue in that case as providing dwelling coverage, despite the property being vacant, when the dwelling coverage referenced "residence premises" which were defined as "the one- or two-family dwelling, other structures and grounds; or that part of any other building where you live, shown as the *residence premises* on the Declarations." *Id.* at 747. The court in *Hill* explained the only residency requirement it could find therein was the reference to "that part of any other building where you live" which was clearly meant merely to identify "the appropriate space" subject to coverage "when the insured resides in a multi-unit dwelling and not in a 'one- or two-family dwelling' of the type listed previously in the definition." *Id.* at 748.

In this case the definitional language of "you," "your," and "insured," combined with the terms of Coverage C (Personal Property) unambiguously provide coverage for personal property of an insured who resides at the residence. (Docket No. 22-4, pgs. 8, 10). Heh did not reside at the Property, so denial of coverage for his personal property was not improper. And while the Court is not unsympathetic to Heh's protestation that he should benefit from coverage when he lived at the Property and paid insurance premiums for decades before the 2020 fire, the Court is "required to give effect to [unambiguous] language." *Meyer*, 648 F.3d at 164 *(*quoting *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

### IV.   Conclusion

Based on the foregoing, Nationwide's Motion for Summary Judgment is **granted**. Heh's Motion for Partial Summary Judgment is **denied**. An Order consistent with this Memorandum Opinion follows.

*s/ W. Scott Hardy*
W. Scott Hardy

                                                                                       United States District Judge

Dated:             December 22, 2023

Cc/ecf:            All counsel of record